UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KEVIN WARREN JACKSON,

        Plaintiff

v.

JEFFREY CURTIS

        Defendants.

No. 2:13-cv-00206-AC

OPINION & ORDER

ACOSTA, Magistrate Judge:

Pro se plaintiff Kevin Warren Jackson ("Jackson"), a prisoner currently incarcerated in Alaska, filed the present lawsuit against Corrections Officer Jeffrey Curtis ("Curtis") for injuries sustained after Curtis shot Jackson during a prison disturbance at Snake River Correctional Institution ("SRCI"). Jackson alleges Curtis used excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Curtis now moves for summary judgment on Jackson's excessive force claim. He argues his conduct did not violate Jackson's Eighth Amendment rights and, even if it did, he is entitled to qualified immunity. Jackson did not file a response to Curtis's motion. After careful review of the record, the court concludes Curtis is

entitled to summary judgment.

*Factual Background*

On August 18, 2011, Curtis was stationed in a watch tower overlooking the recreation yard in SRCI during an inmate recreation period. (Declaration of Jeffery Curtis ("Curtis Decl.") at ¶ 2.) During the recreation period, a fight occurred in the yard on the concrete basketball courts, and corrections officers observed Jackson and another inmate, Joel Stobbe ("Stobbe"), assaulting inmate Brian Cole ("Cole"). (Curtis Decl. ¶ 4.) Curtis "gave a verbal command over the loud speaker to 'break it up' and 'stop fighting[,]'" but Jackson and Stobbe ignored the command. (Curtis Decl. ¶ 4.) Curtis "made a radio call to yard staff that there was a fight on the yard near the basketball courts" in hopes of getting officers on the ground to intervene in the altercation. (Curtis Decl. ¶ 4.)

Other officers in the yard responded after Curtis radioed for assistance. Officer Christopher Hovey ("Hovey") was in the yard at the time the fight broke out. (Declaration of Christopher Hovey ("Hovey Decl.") at ¶ 4.) When Hovey received the radio call from Curtis, he and another officer "started trotting toward the incident." (Hovey Decl. ¶ 5.) Eventually, the officers slowed their pace to a walk and scanned their surroundings to ensure that the fight was not a diversion from some other event happening in the yard. (Hovey Decl. ¶ 5.) They nonetheless continued steadily toward the three inmates. (Hovey Decl. ¶ 5.)

Cole fell to the ground and attempted to protect his head with his hands while Jackson and Stobbe continued to pummel him. (Curtis Decl. ¶ 4.) At one point, Jackson "stomped on [Cole's] head hard enough to make it bounce on the concrete." (Curtis Decl. ¶ 4.) When Curtis saw Jackson stomp on Cole's head, Curtis grabbed his rifle to survey the situation through the rifle's scope. (Curtis Decl. ¶ 5.) At this point, officers on the ground were still fifteen-to-twenty feet away from

the fight. (Hovey Decl. ¶ 5 ("I was about 1/3 the way across the way across the basketball court"). Curtis "observed [] Jackson swing his right leg back to kick [] Cole in the head again," and believed he needed to stop the fight immediately to prevent serious bodily injury to Cole. (Curtis Decl. ¶ 5.) He fired a single shot from his rifle which hit Jackson in the hip. (Curtis Decl. ¶ 5.) Another officer who was stationed in a different tower testified that he too perceived a risk of serious bodily injury to Cole and "would have taken the shot [himself]" had Curtis not done so. (Declaration of Jordan Bunn ¶¶ 6-7.) Jackson collapsed to the ground, and Stobbe immediately complied with the guards' orders to lay down on the ground. (Curtis Decl. ¶ 5.)

Curtis's bullet entered Jackson's body at his hip and hit his pelvis. (Def.'s Ex. 6 ("Jackson Depo.") at 26:9-10.) When the bullet hit bone, it splintered into several shards, one of which lodged in Jackson's spinal canal, where it remains to this day. (Jackson Depo. at 9:11-16.) Jackson suffered significant permanent injury as a result of the gunshot. He has permanent nerve damage, which caused weakness and paralysis in his ankle. (Jackson Depo. at 8:18-21.) Jackson needs a leg brace in order to walk. (*Id.*) He also has ongoing nerve pain and weakness in his leg muscles. (Jackson Depo. at 6:20-22.) Jackson contends that, due to these serious permanent injuries, he is entitled to ten million dollars in damages. (Compl. at 21.)[1]

*Legal Standard*

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of establishing that no issue of fact exists

---

[1] The court need not address the admissibility of the proffered expert opinion of Eugene E. Atherton because the testimony of Defendant's lay witnesses sufficiently establishes that Curtis's actions were justified.

and that the nonmovant cannot prove one or more essential elements of a claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the movant meets his burden, the nonmovant must "go beyond the pleadings [ ] by her own affidavits . . . [to] designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). However, a non-movant's failure to respond to a motion for summary judgment is not, without more, justification for granting the motion by default. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

On summary judgment, the court is bound to view all facts in a light most favorable to the nonmovant and must draw all justifiable inferences in the nonmovant's favor. *Narayan v. EGI, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010). Further, where the nonmoving party to a motion for summary judgment is a *pro se* litigant, the court must "construe liberally the filings and motions." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

*Discussion*

Curtis makes two arguments in favor of summary judgment. First, he argues Jackson's Eighth Amendment rights were not violated. Second, Curtis argues that, even if he committed a constitutional violation, he is entitled to qualified immunity from suit. Jackson did not respond to Curtis's arguments.

I. Eighth Amendment Violation

Curtis argues Jackson cannot demonstrate the necessary elements of an Eighth Amendment excessive force claim. The Eighth Amendment's prohibition against cruel and unusual punishment extends to prohibit the use of excessive force by prison officials. *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003). An Eighth Amendment claim has two elements. First, the plaintiff must demonstrate that the defendant used force which "was objectively 'harmful enough' to establish a

constitutional violation." *Hudson v. McMillian,* 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). Second, the plaintiff must demonstrate that the defendant acted with a culpable mental state. *Hudson,* 503 U.S. at 8.

"The Court's settled rule is that the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Martinez,* 323 F.3d at 1183 (quoting *Hudson,* 503 U.S. at 5)) (internal quotation marks and brackets omitted). However, prisons can be violent places, and prison officials must occasionally use force to keep order. When force is used to keep order in the face of "a riot or a lesser disruption, corrections officers must balance the need to 'maintain or restore discipline' through force against the risk of injury to the inmates." *Hudson,* 503 U.S. at 6. Stated alternatively, the court must determine "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.*

When determining whether the Defendant used excessive force, the court analyzes the following factors: "(1) the extent of the injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that needed and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Id.* In undertaking this analysis, the court should afford prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson,* 503 U.S. at 6.

The record demonstrates that Curtis acted in "good faith," and not "sadistically for the very

purpose of causing harm." When Curtis first observed the fight in the prison yard, he warned Jackson and Stobbe to "break it up" and "stop fighting." It was only after he saw Jackson "stomp on [Cole's] head hard enough to make it bounce on the concrete" that Curtis shouldered his rifle and took aim at Jackson. Even then, Curtis did not shoot. Only when Curtis observed Jackson prepare to kick Cole once more did Curtis fire his weapon. At that point, Curtis fired a single shot into Jackson's hip. On the record before the court, Curtis had a reasonable belief Cole was in imminent danger of serious bodily harm and aimed for a non-vital area of Jackson's body. Curtis had a clear penological goal behind his use of lethal force, and did not shoot Curtis merely to cause "wanton pain and suffering." Thus, Jackson cannot establish that Curtis acted with a culpable mental state, and cannot prove the subjective element of his Eighth Amendment claim.

Analysis of the five-factor test further demonstrates Jackson cannot succeed in his excessive force claim. Although Jackson's injuries were severe enough to give rise to an Eighth Amendment claim, the other four factors weigh in Curtis's favor. First, there was a need to apply force. Jackson and Stobbe were assaulting Cole while Cole was lying on the concrete attempting to cover his head and neck with his arms, and Jackson refused to comply with Curtis's verbal commands to stop. Permitting the assault to continue would likely have resulted in serious injury to Cole. Second, Curtis used a reasonable amount of force given the circumstances. Cole was in imminent danger of serious bodily harm, and other officers were still two-thirds the length of the basketball court away from the inmates when Jackson reared back to kick Cole in the head once more. Curtis reasonably used the force necessary to stop the altercation. Curtis contended in his Complaint, and again in his deposition, that he was entitled to a warning shot before officers employed lethal force. Warning shots are the "least preferred method of warning" under Oregon prison regulations due to the threat

of "a missed shot or ricochet." OAR 291-013-0104. Curtis already had verbally warned Jackson, and Curtis resorted to lethal force only after it appeared Cole was under imminent threat of serious bodily injury. Third, Curtis reasonably perceived a significant threat to Cole because Cole was lying defenseless on the ground while two inmates assaulted him. Fourth, Curtis gave Jackson a verbal warning before resorting to lethal force and, given Cole's defenseless position at the time, it likely would have been impracticable for Curtis to resort to further warnings before employing heightened force. Because four of the five factors weigh in Curtis's favor, it is clear no reasonable jury could find that Jackson's Eighth Amendment rights were violated. Thus, Curtis is entitled to summary judgment in this matter.

## II. Qualified Immunity

Curtis next argues that, even if he did use excessive force against Jackson, he is entitled to qualified immunity from suit because he did not violate a clearly established constitutional right. Because the court concludes no reasonable jury could determine Jackson's Eighth Amendment rights were violated, the court need not address whether Curtis is entitled to qualified immunity.

*Conclusion*

For the aforementioned reasons, Curtis's Motion for Summary Judgment (Dkt. No. 68) is GRANTED, and a judgment will be entered in Curtis's favor.

IT IS SO ORDERED

DATED this 8th day of September, 2015

JOHN V. ACOSTA
United States Magistrate Judge